Ruffin, C. J.
 

 There is to be a loss of the wages of the' vessel for the period between the day of the wreck and the end of the fishing season; and the quéstion is,1 on which of these parties it ought to fall. That depends on the legal import and obligation of the stipulation of the plaintiff’s testator. In the present state of tbe case, it is to be assumed, that his agreement was to let the vessel to the defendants during the fishing season at $95 per month, and to have her at the fishery on a day designated, properly manned and “furnished with sufficient cables, anchors, and other tackling.” His Honor thought this like a contract for hiring a slave or a house, under which the hirer must pay the hire, though the slave die or the house be burnt. And he was further of opinion that the agreement was satisfied, although there was a defect in the cable, provided it was latent; so that the plaintiff did not know it, and could not, by such an examination as a man of ordinary prudence would make, have discovered it, but really believed, from its appearance, that it was sound and good. From that opinion, we own, ours differs.
 

 
 *550
 
 The opinion oí this Court is, although this contract is not a warranty) “that the cable should prove sufficient under
 
 all
 
 circumstances,” yet that it is an undertaking and warranty, at tjirje j.{je vesge] wgnt ¡nt0 tpe defendants’ employment, it was furnished with cables proper and sufficient for all the ordinary perils of navigation, while attending on a fishery on the north side of Albemarle Sound; in other words, adequate to all emergencies except the acts of God or accidents inevitable by the foresight and diligence of man. The agreement, as ascertained here, is to receive the same construction as if drawn up in a regular charter party. We believe the law is settled, that when the owner of a vessel charters her or puts her up for freight, it is his duty to see that she is tight and staunch, and properly furnished with tackle and apparel, ánd in a suitable condition for the service, and to keep her in that condition unless'prevented by the perils of the sea. Here there was no such peril encountered, no storm, nothing but ordinary weather, which did not interrupt the laying out of the seine; and the cable parted by reason of a defect, which existed at the time of the contract, but was unknown to the plaintiff’s testator. But his innocence does not entitle him to recover wages, that were never earned. In his Treatise on Shipping, p. 218, Abbott lays it down, that if the merchant suffer loss, by reason of any insufficiency of the vessel or her furniture at the outset of the voyage, he will be entitled
 
 to
 
 a recompense. 'He cites an opinion of Pothier, that, if the ship has been surveyed and reported sufficient, the owner ought not to be answerable for damages occasioned by a defect, which he did not nor could not know. But even Potheir agrees that, in such a case, the owner must lose his freight. Upon these opinions Abbott comments, stating his own to be, that in the English law, the owner is liable to damages on his covenant, and also to the loss of the freight- money. His reasons are, that defects in the body of a ship — and much more in her furniture — cannot exist, uhless occasioned by the age or particular employment of the ship, or some accidental disaster that may have happened to it, all of which ought to be known to the owner, and ought to lead to an exami
 
 *551
 
 nation of the interior as well as the exterior parts; indeed,” says he, p. 220, “this contract, although greatly partaking of the nature of the contract of letting to hire; is not precisely the same, but
 
 includes in itself a warranty
 
 beyond that, which is contained in a contract for letting to hire.” He then proceeds to state that warranty and its effect in the following language: “In a charter party the person, who lets the ship, covenants that it is tight, staunch and
 
 sufficient¡
 
 if it is not so, the terms of the covenant are not complied with, and the ignorance of a covenantor can never excuse him.” He then illustrates his position by citing Lord Holt’s distinction in
 
 Coggs
 
 and
 
 Barnard,
 
 between the contract for the carriage of goods and that of letting to hire; where he says^
 
 “
 
 the law charges the person” (the master of a ship among others) “ intrusted to carry goods, against all events but the acts of God and the King’s enemies; so that a common carrier is an insurer against all perils or losses, not within that excep-, tion.”
 

 This has also been considered as undoubted law in this State, and applied to the case of a vessel performing a voyage at sea. In
 
 Backhouse
 
 v.
 
 Sneed,
 
 1 Mur. 173, the vessel was lost by reason of an internal and unknown defect in the rudder, which was apparently sound; yet the owner was obliged to make good the cargo to the shipper. Much more clear must it be, that wages cannot be recovered,- which the vessel never earned and did not earn for want of sea-worthiness. That the law wisely holds this doctrine will be more apparent from considering the consequences of a contrary rule. The owner, for example, may know of many defects, of which other persons are ignorant, and of which the
 
 scienter
 
 cannot be brought home to him. As Abbot says,- he
 
 ought
 
 to know all the defects of his own vessel. The interests risked on her are of too much value, to excuse the want of either diligence or skill in examining into her condition; and to avoid the evils, that might arise from the negligence of the' owner in that respect, the law must infer astipulation by him^ that the condition of the vessel is suitable to the service.Let it not be said that the shipper may also examine for him-
 
 *552
 
 self. Such a requirement would break up trade. When wls^es to ^re a servant or a house, each person is the best judge of what will suit him, and one person has nearly the same opportunities and competency with another for enquiry and examination. But it is otherwise with respect to ships. Indeed a vessel is
 
 often
 
 chartered
 
 for
 
 a voyage, when she is at sea or in a distant port, and therefore the merchant has no opportunity for inspection. But, if it was present, few persons have the knowledge requisite to detect its defects; and it would thus become necessary for every shipper to be at the trouble and expense of a regular survey by a professional person, or be obliged to put tip with the representation of the ship-owner,
 
 on
 
 which he would be liable only
 
 on a
 
 deceitful affirmation or concealment,
 
 of which
 
 satisfactory proof is scarcely possible. As one party or the other must run the risk of a defect in the ship, it is not therefore difficult to say, on which, in point of policy and for the futherance of fair dealing, the law ought to impose it, as a part of the contract implied in chartering a vessel. But when, as here, the agreement is express, that the vessel & her findings are
 
 sufficient,
 
 it can be held to mean no less than that they are
 
 actually
 
 sufficient, and not merely that they are
 
 apparently
 
 so. If this vessel had outlived the accident of losing her cables and anchors, it is clear the owner would have been bound to supply others within a reasonable time. Indeed, the law im{plies an agreement on the part of the owner to keep the vessel in repair, without any express stipulation to that effect.
 
 Ripley
 
 v.
 
 Scaife,
 
 5 Barn. & Cres. 167.
 
 Putnam
 
 v.
 
 Wood,
 
 3 Mass. Rep. 481. This shews that this is not a mere contract for hiring; since, if .it were, the charterer would be obliged to supply the parts that gave way, or lose the use of the vessel for the residue of the term. But even if a vessel be sufficient at the commencement of a voyage, but, as here, be lost in the course ofit, the owner, though not liable indeed to the freighter for damages, loses his freight money.
 
 Kimball
 
 v.
 
 Tucker,
 
 10 Mass. Rep. 192. At all events, all beyond freight
 
 pro rata itineris peracti. As
 
 to that there is no dispute in this case, for the defendant
 
 *553
 
 submitted to a verdict for the wages for the time the vessel lived.
 

 Per. Curiam, Judgment reversed and new trial awarded.